**LINK et al. v. STATE'S OIL CORPORATION. (No. 1197.)**

(Court of Civil Appeals of Texas. El Paso. March 10, 1921.)

1. Mines and minerals ⬿79(3)—Payment of rentals in advance held compliance with lease.

Where an oil lease provided lessee should begin drilling a well or pay rentals in quarterly installments "on or before" the beginning of each quarter, a payment for a year in advance complied with its terms.

2. Mines and minerals ⬿78(2)—Lease held not to be canceled for delay in development, rentals having been paid.

A lease of oil land in proven territory, which provides for its continuance by beginning the drilling of a well or paying stipulated rentals, and which does not make the right to pay rentals instead of drilling dependent on lessee having a good reason for not drilling, or make the consideration of drilling more real than that of the rental, cannot be canceled for delay to develop because the delay was without good reason: rentals having been paid in lieu thereof.

Appeal from District Court, Callahan County; W. R. Ely, Judge.

Suit by L. C. Link and wife and others against the State's Oil Corporation. Judg-

ment for the defendant, and the plaintiffs appeal. Affirmed.

Ritchie & Ranspot, of Mineral Wells, for appellants.

Scott, Brelsford, Funderburk & Ferrell, of Eastland, for appellee.

WALTHALL, J. This suit was originally brought by appellants, L. C. Link and wife, Ada Link, E. B. Richie, and J. H. Barton, in the district court of Stephens county, against appellee, State's Oil Corporation, to cancel an oil and gas lease upon a tract of land, a part of the Salvador Flores Survey in Stephens county. The suit was thereafter, by agreement, removed to and tried in the district court of Callahan county.

The material facts alleged by plaintiffs are, substantially: That on the 29th day of May, 1917, Link and wife executed to Joseph M. Weaver, assignor of State's Oil Corporation, a mineral lease upon the land in question for a period of five years; that the lease, among other provisions, provides that if no well was commenced upon the land on or before May 29, 1918, the lease should terminate as to both parties, but further provides that the lessee might defer the period for the beginning of such well for a period of three months from the 29th day of May, 1918, by paying or tendering to the lessor, or to the lessor's credit in the First National Bank at Strawn, Tex., as the depository, the sum of $36, which sum should operate as a rental and cover the privilege of deferring the commencement of a well for three months from said date. That in like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively; that no well had been commenced on the leased premises prior to the 29th of May, 1918, or at any other time, and that defendant had not paid or tendered to the lessors the sum of $36 for a three-month extension of the lease, or any other sum, and has never at any time paid or tendered a like sum for any other quarterly extension, and that said lease, if ever valid, terminated as to both parties on the 29th of May, 1918.

That the principal consideration to the lessors for the instrument was the agreement of the lessee to properly and with reasonable dispatch and within the period fixed by the lease develop the premises and produce oil and gas therefrom and the resulting royalties that would be payable to lessors. That Weaver took the lease for speculative purposes, and with the intention not to develop the same, and that same has not been developed. That the purpose of the provision authorizing the lessee to procure extensions of time within which to commence a well was to entitle lessee to such

extensions only in the event he was unable sooner to commence the drilling of such well for good cause or reasons beyond his control, but not to give the right to indefinitely delay the development of the premises without cause, or for speculative purposes. Plaintiff alleged demand for development and refusal. A copy of the lease was attached to the petition. State's Oil Corporation answered by general demurrer, general denial, and plea of not guilty. A jury was waived. The trial court made and filed the following findings of fact and conclusions of law:

"(1) The court finds that on May 29, 1917, the plaintiff L. C. Link and wife executed to the State's Oil Corporation oil and gas lease for a down consideration of $242, and providing that if no well was commenced on the land in controversy within a year that the privilege of extending the time for beginning such well should be by the payment of quarterly rentals, on or before the beginning of each quarter. ·

"(2) The court finds that said lease was for a term of five years.

"(3) The court further finds that the ·quarterly rentals were $36, and that prior to May 29, 1918, the State's Oil Corporation tendered to and deposited in the depository named in said lease four quarterly payments, to wit, $144, and that said tender and deposit was also made on or before May 29, 1919; that said payments were made in lump sums of $144 each, and was intended by the defendant to cover four quarterly payments in each instance, and that the rentals were paid by said two deposits in annual advance payments, instead of quarterly advance payments, which payments plaintiff refused to accept.

"[Findings four and five are not copied, as they have reference to issues not raised by any of the assignments.]

"(6) The court finds that the land in controversy is about 4½ miles northwest of Ranger, in Stephens county, Tex., and in what might be termed 'proven oil territory,' with producing wells within one-half and three-quarters of a mile from said land, but no operations for drilling has commenced on the land in controversy.

"(7) The court finds that a well was drilled by the defendant, the State's Oil Corporation, about 600 yards from the land in controversy, and oil was discovered, but not in paying quantities."

#### "Conclusions of Law.

"The Court concludes as a matter of law that the State's Oil Corporation has complied, in all respects, with the requirements of the contract or lease, and that the plaintiffs ought not to prevail in this suit."

In addition to the findings, as above, the attorneys for plaintiffs and defendant agreed to the following:

"It was agreed by and between the attorneys for both plaintiffs and defendant:

"(1) That on May 29, 1917, plaintiffs L. C. Link and wife, Ada Link, executed and delivered to Joseph M. Weaver a mineral lease on the property described in plaintiff's petition, a correct copy of which lease contract is attached to plaintiff's first amended original petition, as Exhibit A, and which is here referred to for full statement of the provisions of same, for a cash consideration of $214.50.

"(2) That said lease contract was properly executed, and privily acknowledged by the said Ada Link in regular and proper form.

"(3) That thereafter, on or about January 31, 1918, the said Joseph M. Weaver transferred and assigned to defendant, State's Oil Corporation, all rights acquired by him under the terms of the said lease contract.

"(4) That on the 23d day of March, 1918, defendant tendered to plaintiffs, L. C. Link and Ada Link, through the First National Bank of Strawn, Tex., named as depository in said lease contract, the sum of $144 in payment of one year's rental on the said premises, which tender was by said plaintiffs refused. That on the 7th day of May, 1919, defendant made a tender to said plaintiffs in like manner and of like amount, in payment of rental for an additional 12 months, which tender was by said plaintiffs refused, and said tenders have been kept good.

"(5) That defendant has not at any time made to said plaintiffs any payments or tenders of rentals, other than as last above set out.

"(6) That by assignment from L. C. Link and wife, Ada Link, plaintiffs Barton and Richie acquired undivided interests in said property, and all plaintiffs are joint owners of the minerals underlying the said land, subject to the aforesaid lease to Joseph M. Weaver, now owned by State's Oil Corporation."

The court rendered judgment for appellee.

[1] The first two assignments are presented under three propositions.

The three propositions may be reduced to one, viz.: Was the payment in advance of $144 into the depository bank at one time a compliance with the terms of the lease contract that the rental should be paid in quarterly payments of $36 each? We answer the question in the affirmative. Certainly it was not a breach of the contract to so make the payments. The appellee had the right, under the contract, to begin the drilling of a well, or to pay the rental. Appellee chose the latter. The forfeiture of the contract rested upon the failure of appellee to begin the drilling of a well and the failure to pay the stipulated rental. The rental was at all times during the full period in the depository bank to the credit of appellants. The contract provides for payment "on or before." This payment was before the date fixed by the contract for payment. The two assignments are overruled.

[2] The third assignment is similar to the first two. It reads:

"The court having found that the land in question is in proven oil territory, and that the defendant has not commenced operations thereon at any time, and defendant having alleged and shown no good reason why it has not commenced the development of said land, the court erred in refusing to cancel said lease for failure to develop, and in holding that the lease contract has been in all things complied with."

The first proposition thereunder is to the effect that the real consideration of the lease was the royalties to be derived from the development of the land for oil and gas. The second proposition is that a lessee cannot, by paying rentals, unduly delay the development of the property when in a proven territory, but that the payment of rental in lieu of development is in the nature of a privilege enabling lessee to save the forfeiture when delayed by some equitable reason. We think it a sufficient answer to the propositions to say that the contract does not so read. The contract does not provide that the right to pay rentals instead of drilling a well is dependent upon the defendant having a good reason for not drilling; nor does the contract make the consideration of drilling of a well more real than that of the rental. It provides that the lessee may continue the life of the contract by beginning the drilling of a well, or by paying the stipulated rental. Courts, in construing contracts, cannot write into them what the parties to contracts have not themselves written therein.

The assignment is overruled.

Finding no reversible error, the case is affirmed.